O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COBRA SYSTEMS, INC., a California corporation<br><br>            Plaintiff/Counter-Defendant,<br><br>   v.<br><br>ACCUFORM MANUFACTURING, INC., a Florida corporation, and DOES 1–10, inclusive,<br><br>            Defendants/Counterclaimants. | Case No. 2:13-cv-05932-ODW(JEMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COBRA'S MOTION FOR PRELIMINARY INJUNCTION [20]** |

## I. INTRODUCTION

This action arises out of a business relationship that went sour between Plaintiff Cobra Systems, Inc. ("Cobra") and Defendant Accuform Manufacturing, Inc. ("Accuform"). Cobra sells industrial label printers under the trademark VnM®. The two parties had an oral business arrangement where Accuform sold Cobra's VnM® printers through its catalog. After the business arrangement fell apart, Accuform went into direct competition with Cobra, selling an almost identical printer under the name Spitfire. Cobra filed suit for copyright and trademark infringement as well as unfair competition and breach of oral agreement. (ECF No. 1.) Now before the Court is Cobra's Motion for Preliminary Injunction. (ECF No. 20.) The Motion relates only to Cobra's trademark and unfair competition claims. For the reasons discussed below,

the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Preliminary Injunction.[1]

## II. FACTUAL BACKGROUND

Cobra offers industrial printing products and services. (Erickson Decl. ¶ 2.) In 2008, Cobra started expanding its line of industrial printers and began to develop the VnM® line of thermal label printers. (*Id*. ¶ 4.) The first VnM® product, the VnM® 2 Signmaker was released in early 2009. (*Id*. ¶¶ 3–5.) The printer includes a keyboard and does not require a personal computer connection. (*Id*. ¶ 5.) On February 10, 2009, Cobra filed its VnM® mark with the United States Trademark Office. (Murphy Decl. Ex. 1.) It was published for opposition on June 9, 2009, and registered on November 10, 2009. (*Id*.; Trademark Reg. No. 3710479.) Since the introduction of the VnM® 2 Signmaker, Cobra has also introduced several other printing products bearing the VnM® mark. (Erickson Decl. ¶ 6.) Cobra's products are carried in third-party catalogs, but all bear Cobra software and labels. (*Id*. ¶ 7, Exs 1–3.)

Accuform approached Cobra in 2010 about carrying the VnM® line of printers in its catalog. (Erickson Decl. ¶ 8; Zee Decl. ¶ 20.) At the time, Accuform offered pre-printed signs but no industrial printers. (Erickson Decl. ¶ 8.) The parties agreed to work together, but did not memorialize the terms of their business relationship in writing. (Zee Decl. ¶ 20.) On February 23, 2011, Accuform announced the addition of Cobra's VnM® printers on its website. (*Id*. ¶ 22.) Accuform also assigned the VnM® printers internal SKU numbers, referred to as "part numbers" by Cobra, in order to add the printers to Accuform's product list. (*Id*. ¶ 21.)

In 2012, the business relationship began to fracture. (Erickson Decl. ¶¶ 10–13; Zee Decl. ¶ 27.) Cobra and Accuform disagree as to who is to blame. Cobra contends

---

[1] Cobra has also filed a Motion to Strike the Abramson Declaration filed by Accuform in opposition to the Motion for Preliminary Injunction. The Court **DENIES AS MOOT** the Motion to Strike. (ECF No. 30.) The Motion to Strike essentially contains evidentiary objections to the Abramson Declaration as improper expert opinion. The Court agrees with the substance of the Motion to Strike, but found no relevant information in the Abramson Declaration and did not rely on its contents in deciding whether to issue a preliminary injunction.

that Accuform's sales force was not meeting sales goals and was not technically savvy enough to properly sell the VnM® printers. (Erickson Decl. ¶¶ 10–13.) Accuform contends that Cobra was trying to poach its biggest customer, Grainger Industrial Supply, and essentially cut out the middle man by selling VnM® products directly to Grainger. (Zee Decl. ¶¶ 29–30.) By the fall of 2012, Accuform decided to gradually phase out the VnM® product line. (*Id.* ¶ 30.) Accuform stopped ordering VnM® printers from Cobra in May 2013. (Erickson Decl. ¶ 14.)

As the business relationship between Cobra and Accuform fractured, Accuform began developing its own line of printers under the name Spitfire. (Zee Decl. ¶¶ 12, 30.) The Spitfire printers and VnM® printers look exactly alike, since they use the same hardware from the same Taiwanese manufacturer. (*Id.* ¶¶ 9–12, Exs. 1–2.) According to Accuform, the same printer components are sold to at least four other printer suppliers in the United States. (*Id.* ¶ 14, Ex. 3.) Accuform claims that the Spitfire software is different, utilizing Accuform's media instead of Cobra's media; however the software was developed by a former Cobra employee. (*Id.* ¶ 13.) Accuform began selling the Spitfire printers in 2013, using the same SKU numbers previously assigned to the VnM® printers. (Erickson Decl. ¶ 13; Murphy Decl. ¶¶ 5–7, Exs. 4–6.)

Once Accuform rolled out the Spitfire printers, it began to contact customers who purchased VnM® printers. (Zee Decl. ¶¶ 31–32; Erickson Decl. ¶¶ 15–16, Exs. 8–9.) Accuform visited these customers and replaced the Cobra software on the printers with Accuform's Spitfire software.[2] (*Id.*) Accuform also placed labels over the VnM® mark and any references to Cobra on the printers. (*Id.*) Cobra claims that in addition to these actions, Accuform continues to use the VnM® mark on its website, where references to VnM® printers link customers to Spitfire products. (Murphy Decl. ¶¶ 8–13, Ex. 7–12.) Accuform rejects this contention stating that it has gone to

---

[2] Accuform represented at the January 6, 2013 hearing on the instant Motion that a total of four VnM® printers were modified.

great lengths to purge all VnM® references from its website and catalog. (Zee Decl. ¶¶ 2–8.)

On August 14, 2013, Cobra filed the Complaint against Accuform asserting seven claims including copyright infringement, trademark infringement, unfair competition, and breach of an oral agreement. (ECF No. 1.) Accuform's Amended Answer, filed on October 25, 2013, raises a number of affirmative defenses as well as two counterclaims for invalidity of copyright applications and intentional interference with contract.[3] (ECF No. 18.) Cobra filed this Motion for Preliminary Injunction on November 4, 2013. (ECF No. 20.) Cobra's Motion seeks to enjoin Accuform as follows:

- Cease using and/or displaying the VnM® mark, or variations of the mark
- Cease selling products under the same part numbers as were used for VnM® products when they were sold by Accuform
- Cease selling confusingly similar printers (the Spitfire printers)
- Cease modifying and/or relabeling VnM® printers
- Provide a list to Cobra identifying each VnM® product that was modified and/or relabeled, so that Cobra can contact those customers to return the printers to their original state and reinstate the warranties.

An initial hearing on the Motion was held on December 2, 2013, where the parties indicated a willingness to enter into settlement negotiations before the Court ruled on the preliminary injunction. However, no settlement was reached, and the matter came on for hearing again on January 6, 2014.

### III. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a

---

[3] Also pending before the Court in this action is Cobra's Motion to Strike Affirmative Defenses and Dismiss Counterclaim, which the Court has taken under submission. (ECF No. 38.)

preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 20; *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011). In each case, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). Further, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

## IV. DISCUSSION

Cobra's Motion is based only on the trademark and unfair competition claims.[4] Cobra contends that Accuform should be enjoined from using the VnM® mark, using the part numbers that were previously used to sell VnM® printers, selling Spitfire printers, and modifying existing VnM® printers. The Court finds that a preliminary injunction should issue with respect to the modification of existing VnM® printers, but that Cobra has not met its burden at the preliminary injunction stage for the remaining requests.

**A. Trademark Infringement Under 15 U.S.C. § 1114**

Cobra's Motion first addresses trademark infringement under 15 U.S.C. § 1114. The only action by Accuform that would constitute trademark infringement under this section is the alleged continued use of the VnM® mark to sell Spitfire printers. Cobra argues that Accuform's website continues to reference VnM® products. According to Cobra, there are numerous Accuform webpages that utilize the VnM® mark and then link customers to Spitfire products to make purchases. (Mot. 12.)

---

[4] Cobra has indicated that it may seek an injunction based on the copyright claims at a later date once discovery has been conducted regarding Accuform's Spitfire software. (Mot. 1, n. 1.)

A claim for trademark infringement requires a plaintiff to prove that (1) it owns a valid, protectable mark, and (2) the defendant used a mark confusingly similar to the plaintiff's mark. *Brookfield Comm., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999). Here, the parties do not dispute the first element, that Cobra's VnM® mark is valid and protectable. (Murphy Decl. Ex. 1; Opp'n 10:24–25.) But the parties are in dispute over the second element—whether Accuform is using a mark confusingly similar to plaintiff's mark.

It is first necessary to address what is and what is not at issue with respect to the second element of the trademark infringement claim. The parties are not disputing the similarities of the VnM® and Spitfire marks. They are not similar. Cobra's argument is that Accuform is continuing to use the actual VnM® mark. While Cobra spends considerable time in its Motion analyzing the eight factors used to assess likelihood of confusion, a full analysis under those factors is unnecessary here. *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391–92 (9th Cir. 1993) (finding that the eight factor test applies only when the products are related but not in direct competition); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) (outlining eight factors for likelihood of confusion but holding that the factors are not necessary when goods are in direct competition because confusion is expected). The Court need only determine whether Accuform is in fact using the VnM® mark to sell the Spitfire printers because that in and of itself establishes likelihood of confusion. *See Brookfeild Comm.*, 174 F.3d at 1056 ("In light of the virtual identity of the marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course.").

In support of the Motion, Cobra has submitted only a handful of Accuform webpages that it claims are still live and use the VnM® mark. (Murphy Decl. ¶¶ 8–9, 11–13, Exs. 7–8, 10–12.) Notably, however, Cobra made no mention of these live webpages at the January 6, 2014 hearing. Meanwhile, Accuform argues that it has gone to considerable lengths to remove all references to VnM® on its website and that

1 it is not actively utilizing the VnM® mark to sell Spitfire printers. (Zee Decl. ¶¶ 2–8,
2 35–39.) The Court finds that a preliminary injunction on use of the VnM® mark is not
3 warranted at this time. The webpages submitted by Cobra were created during the
4 business relationship with Accuform. (*Id.*) In addition, Accuform indicates that all
5 the webpages submitted by Cobra were orphaned pages that could only be located by
6 using precise terms in a search engine. (*Id.*) Furthermore, Accuform has since
7 removed these orphaned pages. (*Id.*) There is no evidence that Accuform has
8 intentionally used the VnM® mark to sell Spitfire printers at this time. The Court
9 finds that there is simply nothing to be enjoined. This relates to two of the
10 preliminary injunction considerations: likelihood of success on the merits and
11 irreparable harm. Cobra has not demonstrated that Accuform is using the VnM® mark
12 at this time and, if Accuform has used the VnM® mark to sell Spitfire printers in the
13 past, that can only be compensated with damages.

### B. Unfair Competition Claims

Cobra is asserting unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), as well as under common law and section 17200 of the California Business and Professions Code. The remaining actions that Cobra seeks to enjoin arise under these unfair competition claims, and each will be addressed in turn.

#### 1. Accuform's Part Numbers for Spitfire Printers

First, Cobra argues that Accuform should be enjoined from using the same part numbers to sell Spitfire printers that it used to sell VnM® printers during their business relationship. However, at the January 6, 2014 hearing, both parties admitted that Accuform generated the part numbers at issue. While Cobra has presented some evidence of confusion regarding the use of the same part numbers to sell Spitfire printers, this is insufficient. The part numbers have always belonged to Accuform and are part of a larger internal product-identification scheme. *See Wilden Pump and Eng'g LLC v. JDA Global LLC*, No. 12-cv-1051-ODW (DTBx), 2012 WL 5363319, at *2 (C.D. Cal. 2012) (holding that part numbers did not serve as source identifier);

1  *cf. K-S-H Plastics v. Carolite*, 408 F.2d 54, 58–59 (9th Cir. 1969) (finding no
2  likelihood of confusion between part codes for lighting panels, where plaintiff used
3  letter "K" followed by a code, and defendant used "C" followed by the same code).
4  Therefore, the Court finds no basis to enjoin Accuform from using the part numbers to
5  sell Spitfire printers at this time.

### 2. Similarities of the VnM® and Spitfire Printers

Next, Cobra seeks to enjoin Accuform from selling Spitfire printers, which appears to rest on a theory of misappropriation. Misappropriation is incorporated into common-law unfair competition. *City Solutions Inc. v. ClearChannel Comm.*, 365 F.3d 835, 842 (9th Cir. 2004). It is normally invoked to protect something of value that is not otherwise protected under patent or copyright law, trade secret law, breach of confidential relationship, or some other unfair competition law. *Id.* To succeed under a theory of misappropriation, a plaintiff must prove that (1) it invested substantial time, skill or money in developing its property; (2) the defendant appropriated and used the property at little or no cost; (3) appropriation was without authorization or consent; and (4) plaintiff was injured by the defendant's conduct. *Id.*

To establish a likelihood of success on the merits, Cobra contends that Accuform's Spitfire printers are "knock-offs" of the VnM® printers. (Mot. 6.) It is true that the printers look identical. Both have the same printer body and utilize keyboards. Both operate without a personal computer connection. (Erickson Decl. ¶ 5; Zee Decl. ¶¶ 10–11.) The printers even come from the same Taiwanese manufacturer. (Zee Decl. ¶¶ 10–11, Exs. 1–2.) The only physical distinction is that Cobra's printers bear the VnM® mark and Accuform's bear the Spitfire mark. However, Accuform points out that the hardware, mainly the printer body, is sold to at least four other suppliers in the United States. (Zee Decl. Ex. 3.) Thus, the physical similarities alone are not actionable. Cobra needs more to support a theory of misappropriation. Cobra attempts to bolster its misappropriation theory with undisputed evidence that the software for Accuform's Spitfire printer was developed

1 by a former Cobra employee. However, Cobra admits that it does not yet have the
2 code for the Spitfire software and more discovery is needed to determine whether the
3 Spitfire software is identical to the VnM® software. (Zee Decl. ¶ 13.) Cobra also
4 points out that it began developing the VnM® printers in 2008, which demonstrates
5 that Cobra has invested more than five years into the product line. (Erickson Decl.
6 ¶¶ 5–6.) But Cobra has not supplied detailed evidence regarding the skill and expense
7 that went into the development of the VnM® printers. Without such evidence, the
8 Court is hard-pressed to give significant weight to the time invested, particularly in
9 light of the fact that the hardware actually originated from another source.

10 Overall, the Court finds that Cobra has supplied insufficient evidence at this
11 juncture to support a likelihood of success on the merits. Nevertheless, Cobra's
12 Motion argues that a preliminary injunction may issue even where there are only
13 "serious questions going to the merits" of a claim. *Alliance for the Wild Rockies v.*
14 *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). But even taking this approach, the
15 Court finds that Cobra has not met its burden with respect to the remaining
16 preliminary-injunction factors.

17 As to irreparable harm, Cobra has not quantified its loss in VnM® sales due to
18 Spitfire printers being on the market. But it is logical to assume that there is some
19 loss because the products are in direct competition. Cobra has also supplied
20 evidence—i.e., customer emails—suggesting that customers may be confused by the
21 two nearly identical printers on the market. (Erickson Decl. ¶¶ 15–17, Ex. 7–9.) This
22 confusion harms goodwill, which cannot be compensated with monetary damages at
23 the conclusion of this case. On the other hand, the balance of hardships and the public
24 interest do not favor issuance of a preliminary injunction. A preliminary injunction
25 with only "serious questions" as to the merits requires a "balance of hardships that *tips*
26 *sharply* toward the plaintiff." *Wild Rockies*, 632 F.3d at 1135 (emphasis added).
27 Cobra is seeking to stop all sales of Accuform's Spitfire products until the end of this
28 litigation. This would place too heavy a burden on Accuform. While Accuform has

1  indicated that eighty percent of its Spitfire sales have been halted by its largest
2  customer pending the outcome of this litigation, the reputational harm and financial
3  harm of enjoining the remaining sales would put Accuform in a difficult position.
4  Moreover, since a large portion of Spitfire sales are now on hold without judicial
5  intervention, the burden placed on Cobra by not having an injunction in place is
6  already lessened. Furthermore, the effect of an injunction would be to eliminate
7  Cobra's competition in the market. The Court finds that without a stronger showing
8  of likelihood of success on the merits, it is not in the public interest to eliminate direct
9  competition in the marketplace.

10  Accordingly, the Court finds that the preliminary-injunction factors are not
11  satisfied with respect to Accuform's sales of the Spitfire printers.

### 3. Relabeling and Modification of Existing VnM® Printers

The Court finds that Cobra's final request, to enjoin Accuform from modifying existing VnM® printers, essentially rests on a theory of "express reverse passing off." The Ninth Circuit has held that express reverse passing off is covered by the unfair competition section of the Lanham Act, 15 U.S.C. § 1125(a), and operates in the same vein as false designation of origin. *Smith v. Montoro*, 648 F.2d 602, 606–07 (9th Cir. 1981). It occurs where the defendant removes or obliterates the plaintiff's trademark, without authorization, and then profits off of the goods even though they were actually produced by the plaintiff. *See id.* at 605. Express reverse passing off and any claim under 15 U.S.C. § 1125(a) requires a likelihood of confusion. *Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). The likelihood-of-confusion inquiry "generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services . . . ." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).

Here, Cobra has supplied ample evidence to support a finding that Accuform has engaged in express reverse passing off. It is clear that the VnM® printers

originated with Cobra not Accuform.[5]  Moreover, Accuform admits to visiting customers and placing Accuform labels over the VnM® mark and all references to Cobra. (Erickson Decl. ¶¶ 15–16, Exs. 5–9; Zee Decl. ¶ 32.)  Accuform also admits to retrofitting the machines by replacing Cobra's VnM® software with its own software. (Erickson Decl. ¶¶ 15–16, Exs. 5–9; Zee Decl. ¶ 32.)  Cobra has also supplied evidence of actual confusion from customers who purchased VnM® printers.  There are emails from customers, such as Ingomar Packing, questioning who is responsible for maintenance and sales relating to the printers. (Erickson Decl. ¶¶ 15–17, Exs. 5–7.)  In its Opposition, Accuform contends that Cobra must supply customer survey evidence to support a finding of likelihood of confusion and that evidence of two confused customers is insufficient, but the case law cited by Accuform is inapposite. *See e.g.*, *Cytosport v. Vital Pharmaceuticals, Inc.*, 617 F. Supp. 2d 1051, 1075 (E.D. Cal. 2009) (finding only that survey evidence of customer confusion was an acceptable form evidence at the preliminary injunction stage to demonstrate actual confusion).  In addition, Accuform argues that customers consented to the modifications; however, Cobra's evidence of confusion suggests that the consent may not have been fully informed.

Accuform also contends that express reverse passing off cannot be applied here, because the doctrine requires a sale, and no sale has occurred here. *Roho, Inc. v. Marquis*, 902 F.2d 356, 360–61 (5th Cir. 1990).  The Court disagrees.  First, the Fifth Circuit in *Roho* did not emphasize that a sale is required; there was merely a sale involved in the case.  In addition, a sale is arguably occurring here.  The only reason that Accuform is modifying the VnM® printers is because there is an ongoing business relationship with these customers who need to purchase the media used with the printers.  Instead of receiving VnM® products to use with their VnM® printers, Accuform is replacing the software so that it can sell Accuform's Spitfire products for

---

[5] At the January 6, 2013 hearing, Accuform admitted that orders placed for VnM® printers during the business relationship were shipped directly from Cobra to the customers, and that service on the printers was performed by Cobra.

1  use with what was originally a VnM® printer. Overall, Cobra has demonstrated a
2  likelihood of success on the merits as to its unfair competition claim under the
3  doctrine of express reverse passing off.

4        Since Cobra has demonstrated consumer confusion, the Court also finds that
5  there is irreparable harm. Confusion in the marketplace about the origin of goods
6  goes directly to Cobra's goodwill and reputation, which are hard to quantify and
7  compensate for over time. *See e.g.*, *Herb Reed Enter., LLC v. Florida Entm't Mgmt.,*
8  *Inc.*, No. 12-16868 (9th Cir. filed Dec. 2, 2013) (finding that evidence of loss of
9  control over business reputation and damage to goodwill could constitute irreparable
10 harm); *Stuhlberg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832,
11 841 (9th Cir. 2001) (holding that threatened loss of prospective customers or goodwill
12 can support finding of irreparable harm). Cobra asks the Court to order Accuform to
13 not only cease modifying existing VnM® printers, but also hand over a list of
14 customers whose printers were modified so that Cobra may return those printers to
15 their original status. In balancing the equities, the Court initially hesitated with
16 respect to the second prong of Cobra's request, fearing that it may go beyond the
17 status quo and require too much judicial oversight. However, at the hearing, the Court
18 learned that Accuform has only relabeled and modified a total of four VnM® printers.
19 Based on this representation, the Court finds that very little burden would be placed
20 on Accuform by requiring it to cease modifications and hand over the list of four
21 customers with modified printers.[6] Meanwhile, Cobra's interest in its goodwill and
22 reputation support imposition of an injunction so that customers who actually
23 purchased a VnM® printer know the product's true origin. There is also a genuine
24 concern about the warranties on these modified VnM® printers. The public interest
25 also supports a preliminary injunction for the same reasons.
26 / / /
27

---

28 [6] In fact, Cobra stated at the January 6, 2013 hearing that it is already aware of two of the four printers that have been retrofitted.

## V. CONCLUSION

For the reasons discussed above, Cobra's Motion for Preliminary Injunction is **GRANTED IN PART** and **DENIED IN PART**.  The Court hereby enjoins Accuform from relabeling existing VnM® printers and modifying existing VnM® printers to operate with Accuform's Spitfire software.  The Court also orders Accuform to supply Cobra with a list of the VnM® printers that were relabeled and modified, so that Cobra may contact those customers, if it so chooses, and offer to restore the printers to their original state.  The Court finds that the issuance of a bond is unnecessary based on the low number of printers actually involved in this injunction and likely *de minimis* expense to be incurred by Accuform to comply with this injunction.  *See e.g.*, *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).

**IT IS SO ORDERED.**

January 9, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**